UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ROBERT PARKMAN, <br>    *Plaintiff*, <br> <br> v. <br> <br> WILLIAM O'CONNOR, *et al.* <br>    *Defendants*. | : <br> : <br> : <br> :     No. 3:18-CV-1358 (KAD) <br> : <br> : <br> :     August 1, 2019 |

**REVIEW OF AMENDED COMPLAINT (DE#20)**

On August 13, 2018, Plaintiff, Robert Parkman, an inmate currently confined at the Brooklyn Correctional Institution in Connecticut, brought a civil action *pro se* pursuant to 42 U.S.C. § 1983 against Attorney William O'Connor, Probation Officer Justin Quick, and an unidentified supervisory official in the state's Office of Adult Probation. Compl. (DE#1). He sought "mental and emotional relief" for what appeared to be a claim that the defendants wrongfully placed him in a "sex offender special unit," even though he only pled guilty to unlawful restraint. *Id.* at 6. On May 6, 2019, this Court dismissed the due process claim without prejudice because Plaintiff failed to allege facts showing that he was burdened by the stigma of being placed in a sex offender treatment program or facts showing the defendants' personal involvement in the program placement. Initial Review Order (DE#13).

In dismissing his claim without prejudice[1], the Court instructed Plaintiff to file an amended complaint alleging facts showing the following:

(1) A clear statement as to whether Plaintiff is suing Defendants in their individual capacities, their official capacities, or both;

---
[1] The Plaintiff was not permitted to amend his claims against Attorney O'Connor.

(2) A clear statement as to the type of relief sought (i.e. money damages, injunctive relief, and/or declaratory relief);
(3) An explanation of the "sex offender special unit" and specific facts showing that the placement in the unit imposed on Plaintiff a burden or alteration of his status or rights;
(4) Facts showing that the placement in the unit was based on false information; and
(5) If sued in their individual capacities for damages, facts showing Defendants personal involvement in the sex offender classification and/or placement.

Initial Review Order at 8. On June 25, 2019, Plaintiff filed the instant amended complaint naming Probation Officer Quick and Probation Supervisor Kevin Lawrence as Defendants. Am. Compl. (DE#20). For the following reasons, the Court will permit the amended complaint to proceed.

**Factual Allegations**

On March 8, 2016, Plaintiff pleaded guilty to unlawful restraint in the first degree and was sentenced to five years of imprisonment, execution suspended after one year, and three years of probation. Am. Compl. at 5; Case Detail, *State v. Parkman*, No. HHD-CR15-0679258-T (Conn. Super. Ct. Mar. 8, 2016).[2] Plaintiff had also been charged with sexual assault in the first degree, but the state later dismissed that charge. Compl. at 5; Am. Compl. at 12. One year later, Plaintiff was released from Department of Correction ("DOC") custody and began his probationary term. Am. Compl. at 5. Conditions of probation included that the plaintiff have no contact with the victim, drive only with a valid license, and complete an alcohol treatment program. *Id.*

---

[2] The information contained in the Connecticut Judicial Branch's website is a matter of public record, of which this Court takes judicial notice. *Gillums v. Semple*, No. 3:18-CV-947 (CSH), 2018 WL 3404145, *5 (D. Conn. July 12, 2018) (citing *Mangiafico v. Blumenthal*, 471 F. 3d 391, 398 (2d Cir. 2006)).

Just before he was discharged from DOC custody, Plaintiff met with two counselors who discussed with him the nature of his case. Am. Compl. at 5. One of the counselors told him that, based on the allegations in the police report and his guilty plea to the unlawful restraint charge, his "sex score" would be raised to level three. *Id.* at 5, 11. Plaintiff contested this decision and did not understand why his score was being raised. *Id.* at 5. He later learned that Supervisor Lawrence had placed him in the "sex offender unit" based on his conviction for unlawful restraint. *Id.* at 5-6.

On June 6, 2016 after he was released, Plaintiff met with Officer Quick at the Office of Adult Probation and signed some paperwork. Am. Compl. at 5. At that meeting, Quick informed Plaintiff that he had set an appointment for him with The Connection, Inc.[3] *Id.* A woman from The Connection, Inc. gave Plaintiff a booklet outlining the program, telling him what he cannot do as a sex offender. *Id.* Plaintiff was shocked upon hearing the information because he had not been convicted of a sex offense. *Id.* He told Quick that he was not convicted of a sex offense and that he did not have a court order for mandatory sex offender treatment, but Quick dismissed his complaints. *Id.* at 6.

During the next probation appointment on July 11, Quick arranged a phone call with Plaintiff's attorney, Stephen Cashman. Am. Compl. at 6. Cashman told Quick that Plaintiff was not legally bound by the conditions of the sex offender unit and instructed Plaintiff to only sign standard probation paperwork. *Id.* Cashman then asked Quick to

---

[3] "The Connection, Inc. is a private corporation contracted by the State [of Connecticut] to provide specialized, community-based sex offender treatment and sexual abuse evaluation programs at various locations throughout the State." *Dell v. Pellegrino*, No. CV040830839S, 2004 WL 1926120, at *1 (Conn. Super. Ct. July 30, 2004).

3

permit Plaintiff some time to provide documentation from the state court excusing Plaintiff from sex offender treatment. *Id.* Quick reluctantly agreed. *Id.*

As a result of being placed in sex offender treatment, Plaintiff was required to take polygraph examinations, report all sexual relationships to his probation officer, was not permitted to have a cell phone with a camera, and could not go anywhere where minors were present, including parks, even though Plaintiff had children of his own and worked in a community youth program. Am. Compl. at 9. In October of 2017, Plaintiff was forced to resign from his job because of his obligation to participate in sex offender treatment classes. *Id.* He was also assaulted at his residence and labeled a sex offender, which forced him to relocate. *Id.* at 9-10. The classification has also had a negative impact on Plaintiff's relationship with his daughter. *Id.* at 10.

State judicial records show two separate violation of probation convictions for Plaintiff, one on August 2, 2016 and the other on August 23, 2017. *Parkman*, No. HHD-CR15-0679258-T. He is currently serving a three-year prison sentence for violating his probation. *Id.*; Connecticut State Department of Correction, www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=157667.[4]

**Analysis**

Plaintiff is suing Defendants in their individual and official capacities for violating his right to due process under the Fourteenth Amendment by placing him in sex offender treatment, despite the fact that he was only convicted of unlawful restraint and

---

[4] The Inmate Information contained in the Department of Correction's website is also a matter of public record.

not sexual assault. *See* Am. Compl. at 11-12. He seeks monetary, injunctive, and declaratory relief. *Id.* at 11.

The court does not herein repeat the standard of review or applicable law set forth in the Initial Review Order. Construed liberally, the allegations in the amended complaint state a plausible due process claim against Quick and Lawrence for placing him in sex offender treatment following his release from DOC custody. Plaintiff has alleged that his sex offender classification is false and is based on a charge that the state later dismissed. He further alleges that his classification caused him injury, including the requirement to attend sex offender treatment classes, loss of wages, being physically assaulted, and negative effects on his familial relationships. *See Fonck v. Semple*, No. 3:18-CV-1283 (KAD), 2018 WL 4654700, at *4 (D. Conn. Sept. 27, 2018) (permitting due process claim to proceed based on allegations that plaintiff's sex offender classification resulted in threats and assault). Based on these facts, the Court will permit Plaintiff's due process claim to proceed against Defendants at this time.[5]

**Conclusion and Orders**

(1) The Fourteenth Amendment due process claim may proceed against the defendants in their individual capacities for damages and in their official capacities for injunctive and declaratory relief.

(2) The Clerk shall prepare a summons form and send an official capacity service packet, including the amended complaint (DE#20), to the United States Marshal Service. The U.S. Marshal is directed to effect service of the amended complaint on Defendants in

---

[5] Plaintiff also alleges several facts about being denied bail at this violation of probation proceeding in August 2016. *See* Am. Compl. at 6. It is not clear from the amended complaint how, if at all, either of the Defendants were personally involved in denying him bail and sending him to Hartford Correctional Center. Therefore, any claim regarding the denial of Plaintiff's bail in August 2016 is dismissed.

their official capacities at the Office of the Attorney General, 55 Elm Street, Hartford, CT 06141, within **twenty-one (21) days** from the date of this order and to file a return of service within **thirty (30) days** from the date of this order.

(3) The Clerk shall mail a waiver of service of process request packet containing the amended complaint (DE#20) to Justin Quick at the Office of Adult Probation, 1 Darina Place, Milford, CT 06460 within **twenty-one (21) days** of this Order, and report to the Court on the status of the waiver requests on the **thirty-fifth (35) day** after mailing. If Quick fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on him, and he shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(4) The Court does not have, and Plaintiff has not provided, any location information for Kevin Lawrence. Within thirty (30) days from the date of this Order, Plaintiff must provide contact information for Kevin Lawrence in order to effect service. Failure to provide the requested information may result in the termination of Lawrence as a defendant to this action.

(5) Quick shall file his response to the amended complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to him. If he chooses to file an answer, he shall admit or deny the allegations and respond to the cognizable claim recited above. He may also include any and all additional defenses permitted by the Federal Rules.

(6)     Discovery, pursuant to Fed. R. Civ. P. 26-37, shall be completed on or before February 1, 2020. Discovery requests should not be filed with the Court.

(7) All motions for summary judgment shall be filed on or before March 1, 2020.

(8) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9) If the Plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court. Failure to do so can result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address.

**SO ORDERED**.

Dated this 1st day of August 2019 at Bridgeport, Connecticut.

_____/s/_____
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE