UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ROBERT PARKMAN, | : |
|     Plaintiff, | : |
| | : |
| v. | :    3:18cv1358 (KAD) |
| | : |
| WILLIAM O'CONNOR, | : |
|     Defendants. | : |

## RULING ON DEFENDANTS' MOTION TO DISMISS

On August 13, 2018, Plaintiff Robert Parkman, an inmate who was then confined at the Brooklyn Correctional Institution in Connecticut, brought this civil rights action *pro se* against Attorney William O'Connor, Probation Officer Justin Quick, and an unidentified supervisory official in the state's Office of Adult Probation. Compl., ECF No. 1. He sought "mental and emotional relief" for what appeared to be a claim that the defendants wrongfully placed him in a "sex offender special unit," even though he only pleaded guilty to unlawful restraint. *Id.* at 6. On May 6, 2019, this Court dismissed the due process claim without prejudice because Plaintiff failed to allege facts showing that he was burdened by the stigma of being placed in a sex offender treatment program or facts showing the defendants' personal involvement in the program placement. Initial Review Order, ECF No. 13.

Plaintiff filed an amended complaint naming Probation Officer Quick and Probation Supervisor Kevin Lawrence as Defendants. Am. Compl., ECF No. 20. The Court permitted Plaintiff's Fourteenth Amendment due process claims based on his placement in sex offender treatment following his release from DOC custody to proceed against Probation

1

Officer Quick and Probation Supervisor Kevin Lawrence beyond initial review. Initial Review Order, ECF No. 21.

Defendants have filed the instant motion to dismiss on the basis of (1) lack of personal service on the defendants, (2) lack of personal involvement of the defendants in the alleged constitutional violation; and (3) absolute and qualified immunity. ECF No. 35. Plaintiff has filed a response to the motion to dismiss. ECF No. 36. For the following reasons, the Motion to Dismiss [ECF No. 35] is GRANTED as to the claims against Kevin Lawrence in his individual capacity and DENIED in all other respects.

**FACTUAL ALLEGATIONS**

As an initial matter, the Court takes notice of the State judicial records, which show two separate violation of probation convictions for Plaintiff, one on August 2, 2016 and the other on August 23, 2017.[1] Case Detail, *State v. Parkman*, No. HHD-CR15-0679258-T.

The Court accepts the factual allegations of the complaint and amended complaint as true, and they are as follows.

On March 8, 2016, Plaintiff pleaded guilty to unlawful restraint in the first degree and was sentenced to five years of imprisonment, execution suspended after one year, and three years of probation. Am. Compl. at 5; Case Detail, *State v. Parkman*, No. HHD- CR15-0679258-T. Plaintiff had also been charged with sexual assault in the first degree, but the state later dismissed that charge. Compl., ECF No. 1 at 5; Am. Compl., ECF No. 20 at 12.

---

[1] The information contained in the Connecticut Judicial Branch's website is a matter of public record, of which this Court takes judicial notice. *Gillums v. Semple*, No. 3:18-CV-947 (CSH), 2018 WL 3404145, *5 (D. Conn. July 12, 2018).

Plaintiff was released to probation supervision on April 18, 2016, with standard conditions of probation and special conditions of no contact with the victim, no driving without a license, and completion of an alcohol program.[2] *Id.* at 5.

On March 13, 2016, prior to his discharge from DOC custody, Plaintiff met with two counselors who discussed with him the nature of his case. *Id.*. at 5. One of the counselors told him that, based on the allegations in the police report and his guilty plea to the unlawful restraint charge, his "sex score" would be raised to level three. *Id.* at 5, 11. Plaintiff contested this decision and did not understand why his score was being raised. *Id.* at 5. He later learned that Supervisor Lawrence had placed him in the "sex offender unit" based on his conviction for unlawful restraint. *Id.* at 5-6.

On April 19, 2016, Plaintiff met with Officer Quick, who was responsible for evaluating his file, at the Office of Adult Probation and signed some paperwork. *Id.* at 5, 13. At that meeting, Officer Quick informed Plaintiff that he had set an appointment for him with The Connection, Inc.[3] *Id.* at 5.

On June 14, 2016, Plaintiff met with a woman from The Connection, who gave Plaintiff a booklet outlining the program, telling him what he cannot do as a sex offender. *Id.*

---

[2] The original complaint alleges that he was rearrested on August 1, 2016 after he refused to comply with Probation Officer Quick's order that he" sign[] some papers . . . mak[ing] [him] a sex offender." Compl., ECF No. 1 at 5.

[3] "The Connection, Inc. is a private corporation contracted by the State [of Connecticut] to provide specialized, community-based sex offender treatment and sexual abuse evaluation programs at various locations throughout the State." *Dell v. Pellegrino*, No. CV040830839S, 2004 WL 1926120, at *1 (Conn. Super. Ct. July 30, 2004).

Plaintiff was shocked upon hearing the information because he had not been convicted of a sex offense. *Id.* That same day, he told Officer Quick that he was not convicted of a sex offense and that he did not have a court order for mandatory sex offender treatment, but Officer Quick dismissed his complaints. *Id.* at 6.

During the next probation appointment on July 11, 2016, Officer Quick arranged a phone call with Plaintiff's attorney, Stephen Cashman. *Id.* at 6. Cashman told Officer Quick that Plaintiff was not legally bound by the conditions of the sex offender unit and instructed Plaintiff to only sign standard probation paperwork. *Id.* Cashman then asked Officer Quick to permit Plaintiff some time to provide documentation from the state court excusing Plaintiff from sex offender treatment. *Id.* Officer Quick reluctantly agreed. *Id.*

As indicated in the original complaint, the state charged Plaintiff with violating the terms of his probation. Compl., ECF No. 1 at 5. Upon advice of his counsel that if he pleaded guilty to the violation of probation charge, he would be "s[e]t free," Plaintiff pleaded guilty to the charge, and Judge Taylor, who was also the sentencing judge in Plaintiff's case, continued his probation. *Id* at 6*.; see also Parkman*, No. HHD-CR15-0679258-T. The judge also ordered that Plaintiff return to the sex offender "special unit." *Id.*

As a result of being placed in sex offender treatment, Plaintiff was required to take polygraph examinations, report all sexual relationships to his probation officer, was not permitted to have a cell phone with a camera, and could not go anywhere where minors were present, including parks, even though Plaintiff had children of his own and worked in a community youth program. Am. Compl., ECF No. 20 at 9. In October 2016, Plaintiff was forced to resign from his job because of his obligation to participate in sex offender treatment

4

classes. *Id.* He was also assaulted at his residence and labeled a sex offender, which forced him to relocate. *Id.* at 9-10. Due to his status as a sex offender, Plaintiff's nightmare continued into 2017, having a negative impact on Plaintiff's relationship with his daughter. *Id.* at 10.

**STANDARD OF REVIEW**

To survive a motion to dismiss filed pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557).

Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to a presumption of truth. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Nevertheless, when reviewing a motion to dismiss, the court must accept well-pleaded factual allegations as true and draw "all reasonable inferences in the nonmovant's favor." *Interworks Sys. Inc. v. Merch. Fin. Corp.*, 604 F.3d 692, 699 (2d Cir. 2010). [D]ocuments outside the complaint are generally off-limits on a motion to dismiss," unless they are incorporated in the complaint by reference, integral to the complaint,[4]

---

[4] A document is "integral" to the complaint where the complaint "relies heavily upon its terms and effect . . . ." C*hambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002).

or matters of which the Court can take judicial notice. *See Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016).

Although a *pro se* complaint must be liberally construed "to raise the strongest arguments it suggests," *pro se* litigants are nonetheless required to "state a plausible claim for relief." *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013) (brackets and internal quotation marks and citations omitted). So too must a *pro se* litigant be able "to allege facts demonstrating that her claims arise under this Court's ... jurisdiction." *Gray v. Internal Affairs Bureau*, 292 F. Supp. 2d 475, 477 (S.D.N.Y. 2003). Absent such a showing the "complaint must be dismissed." *Id.* (citing Fed. R. Civ. P. 12(h)(3)).

**DISCUSSION**

**Lack of Service on Defendants**

The Defendants first seek dismissal of all claims against them in their individual capacities and aver that they were not served with a Summons and Complaint. Additional facts will be set forth below as necessary.

Rule 4 (m), which governs timely service, provides:

> If a defendant is not served within 90 days after the complaint is filed, the court--on motion or on its own after notice to the plaintiff--must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4 (m).

Rule 12 (b)(5) allows for the dismissal of a complaint for "insufficient service of process." Fed. R. Civ. P. 12 (b)(5). A Rule 12 (b)(5) motion is the proper vehicle for challenging the mode of delivery or the lack of delivery of the summons and complaint. *Jackson v. City of*

*New York*, No. 14-CV-5755 GBD KNF, 2015 WL 4470004, at *4 (S.D.N.Y. June 26, 2015). A motion to dismiss under Rule 12(b)(5) may be granted if the plaintiff fails to serve a copy of the summons and complaint on the defendants pursuant to Rule 4 of the Federal Rules, which sets forth the federal requirements for service. *McEachern v. ADT, LLC.*, No. 3:18-CV-1311(AWT), 2020 WL 3105530, at *1 (D. Conn. Jan. 31, 2020).

When a *pro se* litigant is permitted to bring an action *in forma pauperis,* the Clerk of the Court will facilitate service in the first instance, by sending the Complaint, along with a Waiver of Service form to the named defendants **at the address provided by the plaintiff**. If the Waiver of Service is not timely returned, the Clerk of the Court forwards the Summons and Complaint to the United States Marshal for in person service upon the defendant **at the address provided by the plaintiff.** Notwithstanding the Clerk's role in the service of the Complaint, it is the *pro se* plaintiff's obligation to provide a correct address for the defendant so that timely service can be effectuated.

### Kevin Lawrence

As to defendant Lawrence, when issuing the Initial Review Order on August 1, 2019, the Court advised Plaintiff as follows:

> (4) The Court does not have, and Plaintiff has not provided, any location information for Kevin Lawrence. Within thirty (30) days from the date of this Order, Plaintiff must provide contact information for Kevin Lawrence in order to effect service. Failure to provide the requested information may result in the termination of Lawrence as a defendant to this action.

ECF No. 21 at 6. On August 21, 2019, Plaintiff filed a Notice indicating that the address of Defendant Kevin Lawrence was "Parole Supervisor of Special Management Unit CT. B.O.P.P 55 West Main Street, Suite 520, Waterbury, Ct 06702." It is now clear that this address was

7

incorrect. Indeed, defendant Lawrence does not work for the Board of Pardons and Parole. It is unsurprising, therefore, that no Waiver of Service was returned to this Court nor service otherwise effectuated as to Kevin Lawrence in his individual capacity.

On September 24, 2019, this Court observed that neither defendants Quick nor Lawrence had been served in their individual capacities in response to a motion for default under Rule 55(a). ECF No. 29. On October 13, 2109, the defendants filed the instant motion to dismiss, putting Plaintiff on notice again that neither Lawrence nor Quick had been served in their individual capacity. ECF No. 35-1 at 2. Plaintiff has made no effort to correct the address information provided with respect to defendant Lawrence since that date.

Plaintiff was cautioned on August 1, 2019 that his failure to provide a valid address for defendant Lawrence may result in the termination of Lawrence as a defendant. ECF No. 21 at 6. The court sees little distinction between the circumstances where a *pro se* litigant fails to effectuate timely service, and the circumstances here, where the *pro se* litigant failed to timely provide a proper address so the clerk could facilitate service. *See Ramirez v. Allen*, No. 3:17-CV-1335 (MPS), 2018 WL 5281738, at *9 (D. Conn. Oct. 24, 2018) (dismissing case where plaintiff prisoner failed to identify John Doe defendants so that service could be effectuated); *Toliver v. New York City Dep't of Corr.*, No. 10 CIV. 5355 (RJS/JCF), 2013 WL 3779125, at *17 (S.D.N.Y. July 8, 2013) (citing *McDay v. Travis,* No. 05–4269, 2007 WL 4102718, at *2 (2d Cir.2007) (affirming dismissal of complaint because pro se plaintiff failed to effect service despite reminders that defendants had not been properly served and given 18 months to effect service)); *Sanders v. Moore,* No. 08 Civ. 11081, 2011 WL 2207551, at *2 (S.D.N.Y. May 6, 2011) (dismissing pro se complaint for failure to effectuate timely service and collecting cases).

Accordingly, the claims against Defendant Lawrence in his individual capacity are dismissed without prejudice.

Because Defendant Lawrence has already been served in his official capacity as instructed by this Court's initial review order, Parkman's claims against Defendant Lawrence for declaratory and injunctive relief [5] will proceed for further development.[6] See Am. Compl, ECF No. 20 at 8; Initial Review Order, ECF No. 21 at 5. As discussed below, the Court has found Plaintiff's due process claim plausible and has rejected the grounds for dismissal set forth in the Defendants' motion to dismiss.

**Justin Quick**

As to defendant Quick, when issuing the Initial Review Order on August 1, 2019, the Court directed service through a service packet (to include a Waiver of Service) on Defendant Quick at the Milford Office of Adult Probation. The genesis of the Milford address is a complete

---

[5] Plaintiff seeks unspecified declaratory relief and an injunction to stop the practice of using police reports to make sex offender classification decisions. ECF No. 20 at 8.

[6] The Court need not consider Defendant Lawrence's personal involvement in the constitutional violation because it is not relevant to the official capacity claim lodged against him. *See Vaughan v. Aldi*, No. 3:19-CV-00107 (JAM), 2019 WL 1922295, at *2 (D. Conn. Apr. 29, 2019) (citing *Gonzalez v. Feinerman*, 666 F.3d 311, 315 (7th Cir. 2011) (*per curiam*) (prison warden was proper defendant for official-capacity claim seeking injunctive relief, although he lacked personal involvement in alleged constitutional violation)). However, a defendant official must have the authority to provide the requested relief. *See Scozzari v. Santiago*, No. 3:19-CV-00229 (JAM), 2019 WL 1921858, at *6 (D. Conn. Apr. 29, 2019) (a claim for injunctive relief may only proceed against a defendant to the extent that a defendant has the power to remedy the alleged on-going constitutional violation); *Ex parte Young*, 209 U.S. at 157 (defendant official must have some connection with enforcement of allegedly unconstitutional act); *Loren v. Levy*, No. 00 Civ. 7687(DC), 2003 WL 1702004, at *11 (S.D.N.Y. Mar. 31, 2003) ("actions involving claims for prospective ... injunctive relief are permissible provided the official against whom the action is brought has a direct connection to, or responsibility for, the alleged illegal action."); s*ee* also *Marshall v. Annucci*, No. 16-CV-8622 (NSR), 2018 WL 1449522, at *8 (S.D.N.Y. Mar. 22, 2018) (retired defendants do not have the authority to rectify any ongoing constitutional violations). The Court shall take up this issue as may be necessary in due course.

mystery and cannot be ascertained from the docket. Quick asserts it is not a correct address and he has never been served.

As noted above, on September 24, 2019, Plaintiff moved for the entry of a default against the Defendants for failure to appear and answer the Complaint. On that same date, the Court granted the motion as to the defendants in their official capacities only, noting that the defendants had not been served in their individual capacities.[7]

On October 2, 2019, Plaintiff filed a Notice [ECF 32] in which he advised the Court that the defendant Quick works at the Office of Adult Probation at 309 Wawarme Avenue, Hartford, Connecticut 06114. Plaintiff did not request the Clerk to direct service to defendant Quick at this address and understandably, the Clerk did not recognize that this address differed from the address to which the original service packet had been sent and did not initiate new service *sua sponte.* And it was not the Clerk's obligation to send a new service packet to this address, absent an order from the Court. However, given the unknown genesis of the Milford address and the role of the Clerk in facilitating service in prisoner litigation, it would be inequitable to dismiss the claims against Quick for this failure of service in light of the October 2, 2019 notice to the Court.

Consistent with Federal Rule of Civil Procedure 4(m), the court may dismiss without prejudice an action for failure to serve a defendant or the court may extend the time period for service of the complaint. Fed. R. Civ. P. 4(m). Because the Court concludes below that Plaintiff has alleged plausible claims, the court shall permit the Complaint to be served on Defendant

---

[7] The default was subsequently set aside upon the appearance of counsel for the defendants in their official capacities only.

Quick at the Hartford address. The Clerk of the Court is directed to send a service packet, to include the Waiver of Service to defendant Quick at the Office of Adult Probation, 309 Wawarme Avenue, Hartford, Connecticut 06114. If a Waiver is not timely returned, the Clerk is directed to forward the service packet to the United States Marshal for in-person service, the costs of which shall be borne by defendant Quick.

**Due Process Claims**

"[T]he Due Process Clause provides that certain substantive rights—life, liberty, and property—cannot be deprived except pursuant to constitutionally adequate procedures." *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 541 (1985).

To state a procedural due process claim, a plaintiff must show "(1) that Defendants deprived him of a cognizable interest in life, liberty, or property, (2) without affording him constitutionally sufficient process." *Proctor v. LeClaire*, 846 F.3d 597, 608 (2d Cir. 2017) (quotations omitted).

Upon initial review, the Court considered Plaintiff's allegations that Officer Quick placed him on sex offender probation, which required sex offender treatment following his release from DOC custody as stating a plausible stigma plus due process violation under the Fourteenth Amendment. ECF No. 21 at 5. To prevail on a "stigma-plus" claim, a plaintiff must allege two distinct elements: "(1) the utterance of a statement sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false [the stigma], and (2) a material state-imposed burden or state-imposed alteration of the plaintiff's rights or status [the plus]." *Vega v. Lantz*, 596 F.3d 77 (2d Cir. 2010) (internal quotation marks and citation omitted). Plaintiff alleged that his sex offender classification is false and is based on a

charge that the state later dismissed; and Defendants' classification decision caused him injury, including the requirement to attend sex offender treatment classes, loss of wages, being physically assaulted, and negative effects on his familial relationships. *See id.* (citing *Fonck v. Semple*, No. 3:18-CV-1283 (KAD), 2018 WL 4654700, at *4 (D. Conn. Sept. 27, 2018) (permitting due process claim to proceed based on allegations that plaintiff's sex offender classification resulted in threats and assault)).

Defendants argue that Plaintiff's complaint should be dismissed because he has not plausibly alleged that Officer Quick was personally involved in the alleged due process violation. Mem. in Support, ECF No. 35-1 at 11.

The "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (internal quotations omitted).  Defendants argue that it was the superior court judge who ordered plaintiff into the "special unit" for probationers with problematic sexual histories – not Officer Quick or Probation Supervisor Lawrence. The Defendants misconstrue the allegations. Plaintiff alleges that after Probation Supervisor Lawrence made the initial classification decision, Officer Quick had responsibility to evaluate his file upon his release from prison and prior to the purported violation of probation or the hearing thereon. Am. Compl., ECF No. 20 at 5-6, 13. Thus, Plaintiff challenges Officer Quick's decision to classify him as a sex offender and require him to undergo sex offender treatment, not the court's order that he continue placement in the sex offender "special unit" after he was already violated. Accordingly, the Plaintiff has plausibly alleged Officer Quick's personal involvement in the asserted due process violation.

Defendants argue next that a denial of Plaintiff's due process rights is implausible because his attorney could have filed a motion to modify his probation under Connecticut General Statutes § 53a-30(c). ECF No. 35-1 at 12-13. Defendants question Plaintiff's failure to avail himself of this option. *Id.* at 12. Indeed, Plaintiff's allegations allude to the possibility that he and his attorney considered filing for a modification of this condition of his probation. *See* Am. Compl., ECF No. 20 at 6 (Attorney Cashman asked Officer Quick for time provide documentation from state court excusing Plaintiff from sex offender treatment.). This Court recognizes that a due process violation based on random or unauthorized acts by state actors occurs only where the State fails to provide a meaningful post-deprivation remedy. *Hellenic American Neighborhood Action Committee v. City of New York,* 101 F.3d 877, 880 (2d Cir.1996) (citing *Zinermon v. Burch,* 494 U.S. 113 (1990)); *see also Segal v. City of New York,* 459 F.3d 207, 213 (2d Cir. 2006) (noting the availability of adequate process defeats a stigma-plus claim). However, whether this doctrine applies to the specific deprivation alleged here, or if it does, whether the remedy available under Section 53a-30(c) provides for sufficient due process to comport with the Fourteenth Amendment, cannot be answered on the present record. Construing all inferences of fact in Plaintiff's favor, the motion to dismiss is denied so that the circumstances of the Plaintiff's alleged deprivation can be further developed through discovery.

**Absolute Immunity**

Defendants argue that they are entitled to absolute immunity because they were functioning as an arm of the court in enforcing the conditions of probation imposed by the court. Absolute immunity applies to non-judicial officers when they perform judicial functions. *See Dorman v. Higgins*, 821 F.2d 133, 136 (2d Cir. 1987) ("Functions most apt to be accorded

13

absolute, rather than qualified, immunity are those integrally related to the judicial process. Two types of factors inform such a decision: the need for absolute immunity in order to permit the effective performance of the function, and the existence of safeguards against improper performance."). ECF No. 35-1 at 14-16.

"As a general matter, probation officers are entitled to immunity in the performance of their duties, but the type of immunity afforded depends on whether 'the duties of the defendants were judicial or prosecutorial, which entitles them to absolute immunity, or administrative, which may entitle them to qualified immunity.'" *Dettelis v. Sharbaugh*, 919 F.3d 161, 164 (2d Cir. 2019) (quoting *King v. Simpson*, 189 F.3d 284, 288 (2d Cir. 1999)). Thus, absolute immunity shields probation officers when they are acting as "an arm of the court" by preparing and providing presentence reports, which are "normally an important part" of a court proceeding. *See Dorman*, 821 F.2d at 136-137. However, when probation officers act outside of their "quasi-adjudicative" roles, their conduct is not absolutely protected, although qualified immunity may apply. *See King,* 189 F.3d at 288 ("It is unclear whether Simpson's alleged action in retarding, or delaying, King's effective parole date pending a hearing on the institutional incident report filed against him was an adjudicative function like denying or revoking parole or merely an administrative function like scheduling or making a recommendation."); *Scotto v. Almenas*, 143 F.3d 105, 111–13 (2d Cir. 1998) (rejecting immunity defense based on parole officer's recommendation that a warrant be issued for the arrest of a parolee as an administrative rather than adjudicative function).

Defendants argue that Plaintiff is challenging Officer Quick's petition for his probation revocation, which as a prosecutorial activity is entitled to absolute immunity. ECF No. 35-1 at

16. Again, the Defendants mischaracterize the Plaintiff's claim. Plaintiff does not allege that Defendants violated his rights by petitioning for his revocation of probation; he alleges that they deprived him of a liberty interest through an unauthorized classification of him as a sex offender, well before the violation petition or the superior court order which followed his violation hearing. Under Connecticut General Statutes § 53a-30, after a court has imposed a sentence of probation, "the Court Support Services Division may require that the defendant comply with any or all conditions which the court could have imposed" in compliance with Section 53a-30(a). It is not ascertainable from the allegations alone, whether Defendants' classification decision and imposition of sex offender treatment as a condition of probation was an administrative responsibility, or an adjudicatory function. Because the Court must construe the facts in Plaintiff's favor, the motion to dismiss on the basis of absolute immunity is denied but the issue may be further developed and raised anew following discovery.

**Qualified Immunity**

Defendants also maintain that they are entitled to qualified immunity even if they are not entitled to absolute immunity. ECF No. 35-1 at 16-21.

Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) ). Qualified immunity "affords government officials 'breathing room' to make reasonable—even if sometimes mistaken— decisions." *Distiso v. Cook*, 691 F.3d 226, 240 (2d Cir. 2012) (quoting *Messerschmidt v. Millender*, 565 U.S. 535, 553 (2012) ). "The qualified immunity standard is 'forgiving' and

'protects all but the plainly incompetent or those who knowingly violate the law.'" *Grice v. McVeigh*, 873 F.3d 162, 166 (2d Cir. 2017) (quoting *Amore v. Novarro*, 624 F.3d 522, 530 (2d Cir. 2010) ).

"The doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (internal quotations and citations omitted). The Court has discretion to determine the order in which it will address the inquiries required when assessing the applicability of qualified immunity. *See Johnson v. Perry*, 859 F.3d 156, 170 (2d Cir. 2017) (quoting *Pearson* 555 U.S. at 236).

A right is clearly established if, "at the time of the challenged conduct ... every 'reasonable official would have understood that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). There is no requirement that a case have been decided which is directly on point, "but existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* In addition, qualified immunity protects state actors when it was objectively reasonable for the state actor to believe that his conduct did not violate a clearly established right. *Manganiello v. City of New York,* 612 F. 3d 149, 165 (2d Cir. 2010). "If a reasonable officer might not have known for certain that the conduct was unlawful – then the officer is immune from liability." *Ziglar v. Abbasi,* 137 S. Ct. 1843, 1867 (2017). Therefore, the question this Court may first ask is whether it was objectively reasonable for any of the defendants to believe their conduct was not unlawful at the time. *Simpson v. City of New York*, 793 F.3d 259, 268 (2d Cir. 2015). Qualified immunity does not apply if, on an objective basis, it is obvious that no

reasonably competent officer would have taken the actions of the alleged violation. *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Defendants argue that they were entitled to presume that they were not violating due process because Plaintiff's probation conditions were imposed by the superior court's order in August 2016. Mem. in Support, ECF No. 35-1 at 13, 19. However, again, the due process violation at issue allegedly stems from the Defendants' classification decision prior to the court order in August 2016. In *Rose v. Goldman*, No. 02 CV 5370 (NGG/LB), 2009 WL 4891810 (E.D.N.Y. Dec. 9, 2009), a probation officer directed the plaintiff to undergo sex offender counseling even though such a condition was not required under the terms of plaintiff's probation. The court afforded the probation officer qualified immunity because the officer did not violate a clearly established constitutional right insofar as the Second Circuit had not yet recognized the stigma-plus due process claim and there was a split within the district courts of the Circuit. *Id.* at *6*. One year later, in *Vega v. Lantz*, 596 F.3d 77 (2d Cir. 2010), the Second Circuit recognized the stigma-plus deprivation as a liberty interest which implicates Fourteenth Amendment due process. Accordingly, the present record is inadequate for the Court to resolve whether Defendants conduct was objectively reasonable. The motion to dismiss is denied on this basis.

## **CONCLUSION**

For the reasons stated above, defendants' motion to dismiss is GRANTED without prejudice as to all claims against Defendant Lawrence in his individual capacity and DENIED in all other respects. It is further ORDERED:

(1) The clerk shall mail a waiver of service process request packet containing the

amended complaint [ECF No. 20] and the Initial Review Order [ECF No. 21] and this Ruling on the Motion to Dismiss to **Probation Officer Quick at Adult Probation, Court Support Services Division Hartford Office,** 309 Wawarme Avenue, Hartford 06114, on or before **August 17, 2020,** and report on the status of the waiver request on the **thirty-fifth (35th) day** after mailing. If Defendant Quick fails to return the waiver request, the clerk shall make arrangements for in-person individual capacity service by the U.S. Marshals Service on that defendant, and that defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(2) Defendant Quick shall file an answer to the amended complaint, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to him.

**SO ORDERED** this 27th day of July 2020, at Bridgeport, Connecticut.

_____/s/_____
Kari A. Dooley
United States District Judge