UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ROBERT PARKMAN, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | 3:18cv1358 (KAD) |
| | : | |
| WILLIAM O'CONNOR et al., | : | |
|     Defendants. | : | |

## RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

On August 13, 2018, Plaintiff Robert Parkman, an inmate who was then confined at the Brooklyn Correctional Institution in Connecticut, brought this civil rights action *pro se* against several defendants seeking "mental and emotional relief" for what appeared to be a claim premised upon his placement in a "sex offender special unit," even though he only pleaded guilty to unlawful restraint. *Id.* at 6. On May 6, 2019, this Court dismissed what the Court construed to be a due process claim without prejudice because Plaintiff failed to allege facts demonstrating that he was burdened by the stigma of being placed in a sex offender treatment program or facts showing the then named defendants' personal involvement in the program placement. Initial Review Order, ECF No. 13.

Plaintiff filed an amended complaint naming Probation Officer Justin Quick and Probation Supervisor Kevin Lawrence as Defendants and the Court permitted Plaintiff's Fourteenth Amendment due process individual and official capacity claims based on his placement in sex offender treatment following his release from DOC custody to proceed against these defendants.

Subsequently, upon motion of defendant Lawrence, the Court dismissed Plaintiff's Fourteenth Amendment claim against Kevin Lawrence in his individual capacity. Ruling, ECF

1

No. 42. On December 23, 2020, Defendants filed a motion for summary judgment on the remaining official capacity claims against both defendants and on the individual capacity claim against Officer Quick. Mot. for Sum. Judg., ECF No. 52.   Under District of Connecticut Local Rule 7(a)(2), Plaintiff's opposition to the motion for summary judgment was due on January 13, 2021. To date, Plaintiff has not filed any opposition to the Defendant's motion for summary judgment. Nor has he sought an extension of time within which to do so.

For the reasons that follow, the Motion for Summary Judgment is GRANTED.

**STANDARD OF REVIEW**

A motion for summary judgment may be granted only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56(a), Fed. R. Civ. P.; *see also Nick's Garage, Inc. v. Progressive Cas. Ins. Co.,* 875 F.3d 107, 113-14 (2d Cir. 2017). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage*, 875 F.3d at 113-14 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Which facts are material is determined by the substantive law. *Anderson*, 477 U.S. at 248. "The same standard applies whether summary judgment is granted on the merits or on an affirmative defense...." *Giordano v. Market Am., Inc.*, 599 F.3d 87, 93 (2d Cir. 2010).

The moving party bears the initial burden of informing the court of the basis for its motion and identifying the admissible evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). He cannot "rely on

conclusory allegations or unsubstantiated speculation but must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Robinson v. Concentra Health Servs.*, 781 F.3d 42, 34 (2d Cir. 2015) (quotation marks and citation omitted). To defeat a motion for summary judgment, the nonmoving party must present such evidence as would allow a jury to find in his favor. *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).

Although the court is required to read a self-represented "party's papers liberally and interpret them to raise the strongest arguments that they suggest," *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015), "unsupported allegations do not create a material issue of fact" and do not overcome a properly supported motion for summary judgment. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

**Facts**[1]

On April 8, 2015, a judge of the Connecticut Superior Court found probable cause to issue an arrest warrant for Plaintiff, who was then age 44, for forcibly restraining and having unconsented-to sexual intercourse with a 16-year-old female. Defs.' Local Rule 56(a)1 at ¶¶ 23-25. On April 21, 2015, Plaintiff was admitted to Hartford Correctional Center as an unsentenced

---

[1] The facts are taken from Defendants' Local Rule 56(a)1 Statement and its supporting exhibits. Local Rule 56(a)1 provides: "Each material fact set forth in the Local Rule 56(a)1 Statement and supported by the evidence will be deemed admitted (solely for purposes of the motion) unless such fact is controverted by the Local Rule 56(a)2 Statement required to be filed and served by the opposing party in accordance with this Local Rule, or the Court sustains an objection to the fact." Defendants informed Plaintiff of this requirement in their Notice to *Pro Se* Litigant. (ECF No. 52-5). Because Plaintiff has not filed a response to Defendants' statement of facts in compliance with Local Rule 56(a)2, Defendants' Rule 56(a)1 statement of facts may be deemed admitted where supported by the evidence.

prisoner after his arrest for Sexual Assault and Unlawful Restraint, both in the First Degree. *See Id.* at ¶¶ 5, 23.

On March 8, 2016, Plaintiff pleaded guilty to the charge of Unlawful Restraint. *Id.* at ¶ 6. He also admitted to a violation of probation that had been previously imposed for a prior conviction for threatening. Quick Declar., Transcript at 2-3. At the plea and sentencing hearing, Plaintiff agreed that he was pleading guilty under the Alford Doctrine with the hope that he would receive a more lenient sentence or lesser penalty than he would have if he had taken the case to trial. *Id.* at 8. The State's Attorney noted that another State's Attorney assigned to the case had been in contact with the victim, the victim's guardian (Department of Children and Families), and that the victim "does present with a myriad of issues that has caused [the State's Attorney] to come up with this compromised disposition[.]" Thereafter, the court indicated that it would accept the agreed upon disposition and sentenced Plaintiff to five years of incarceration with execution suspended after one year, to be followed by three years of probation. Special Conditions of Probation included: (1) No contact with the victim, direct or indirect; (2) submission to all counseling, testing, treatment deemed necessary by Probation and service providers, and signing of all releases so that Probation service providers and the court could communicate; (3) no operation of a motor vehicle unless he had a valid license; and (4) completion of an Alcohol Education Program. Defs.' Rule 56(a)1 at ¶¶ 6, 20, 26; Quick Decl., Transcript at 18-19. The court indicated that the violation of probation would be terminated. Quick Declar., Transcript at 11, 19.

Thereafter, Plaintiff was assigned by Officer Quick's supervisor to the Adult Probation Sex Offender Supervision Unit. Quick Decl. at ¶ 12. On April 11, 2016, Officer Quick was

4

assigned to supervise Plaintiff's probation. Defs.' Rule 56(a)1 at ¶ 30. On April 15, Quick conducted a field visit at Hartford Correctional Center to meet with Plaintiff. *Id.* at ¶ 31. He instructed Plaintiff to report to the Office of Adult Probation upon his discharge from the DOC on April 18, 2016. *Id.*

On April 18, Plaintiff commenced his period of probation but failed to report to the Office of Adult Probation. *Id.* at ¶ 33. On April 19, Plaintiff reported to the Office of Adult Probation, where he reviewed, signed, and agreed to abide by his Conditions of Probation. *Id.* at 34. At that time, Officer Quick explained that due to the nature of Plaintiff's offense, he would refer Plaintiff for a sex treatment evaluation; Quick also explained that Plaintiff was expected to abide by the treatment program. *Id.*

On June 10, Plaintiff reported to the Office of Adult Probation for a scheduled office visit. During this visit, Officer Quick informed him that he had a sex offender evaluation scheduled with The Connection, Inc. ("The Connection") on June 14, 2016. *Id.* at ¶¶ 34, 36.

On June 14, Officer Quick was informed by The Connection that Parkman had refused to sign the Connection's agreement form, resulting in a failed intake. *Id.* at ¶ 37. That same day Officer Quick met with Plaintiff to discuss his failed intake. *Id.* ¶ 38. Officer Quick reminded Plaintiff that he had previously indicated that he would comply with treatment, and Quick informed Plaintiff that his second evaluation was scheduled for June 21, 2016. *Id.*

On June 21, Plaintiff informed Officer Quick that he was too busy to attend this evaluation and decided not to attend. *Id.* at ¶ 39. Officer Quick received confirmation from The Connection that Plaintiff had called fifty minutes after his scheduled appointment to provide notice of his intention not to attend. *Id.*

5

On June 24, Plaintiff failed to report as instructed to the Office of Adult Probation for a second time. *Id.* ¶¶ 35, 40. During a telephone call on that day, Officer Quick informed Plaintiff that he would pursue a warrant for a violation of probation if Plaintiff did not comply with the sex treatment evaluation scheduled for a third and final time. *Id.* at ¶ 40.

On June 29, Plaintiff failed to complete the intake assessment at The Connection. *Id.* at ¶ 41. After Adult Probation was informed of the failed intake, Plaintiff's referral for evaluation was terminated. *Id.*

On July 19, Officer Quick wrote an affidavit for an arrest warrant based on Plaintiff's violation of his probation. *Id.* at ¶ 42. On July 25, the Connecticut superior court found probable cause and signed off on the warrant. *Id.* at ¶ 43.

On August 1, Plaintiff was arrested for a violation of probation and admitted to Hartford Correctional Center. *Id.* at ¶ 44.

On August 2, Plaintiff admitted to the violation of probation charge and was reinstated to probation under the custody of Adult Probation with the same conditions as set forth previously. *Id.* at ¶¶ 45, 46, 48. Superior Court Judge Taylor stated on the record that Plaintiff had "to comply with everything probation tells him, including sex offender treatment." *Id.* at ¶ 46. After his release from court on August 2, 2016, Plaintiff signed his conditions of probation with other probation officers. *Id.* at ¶ 49.

After August 4, Officer Quick was no longer Plaintiff's Probation Officer. *Id.* at ¶ 49. Supervision of Plaintiff's probation was officially transferred as of August 18, 2016. *Id.* at ¶ 50.

Approximately one year later, on August 23, 2017, Plaintiff was sentenced to three years of incarceration for violating his probation a second time. *Id* at ¶ 12; Initial Review Order at 3,

ECF No. 13; Ruling on Mot. to Dis at 4. On November 6, 2019, Plaintiff was discharged from his three-year sentence. Defs.' Rule 56(a)1 at ¶ 13. At present, Plaintiff is not incarcerated, on probation, or subject to any court ordered community supervision. *Id.* at ¶ 15.

## DISCUSSION

Plaintiff asserts that his Fourteenth Amendment due process rights were violated when he was assigned to the sex offender treatment unit by the defendants based upon police reports because he did not plead to a sex offense.   In response, Defendants argue that any official capacity claims against Probation Officer Quick and Probation Supervisor Kevin Lawrence are moot; and that Officer Quick is entitled to absolute immunity and qualified immunity with respect to the claim against him in his individual capacity. Defs.' Mem. at 10-25, 30-32. Defendants assert further that Plaintiff cannot prevail on the merits of his Fourteenth Amendment claim. *Id.* at 26-30.

### Official Capacity Claims

Plaintiff seeks unspecified declaratory relief and an injunction to stop the practice of using police reports to make sex offender classification decisions. Am. Compl. at 8. The Court agrees that Plaintiff's official capacity claims are moot.

Under the doctrine of *Ex parte Young,* 209 U.S. 123 (1908), the Eleventh Amendment does not bar a plaintiff from pursuing official capacity relief against state officials to address an ongoing or continuing violation of federal law or a threat of a violation of federal law in the future. *See In re Deposit Ins. Agency,* 482 F.3d 612, 618 (2d Cir. 2007); *Ward v. Thomas*, 207 F.3d 114, 120 (2d Cir. 2000).   Here, although Plaintiff seeks injunctive relief regarding his classification and the conditions of his probation, he is no longer subject to probation or any type

7

of DOC or other court ordered supervision. *See* S*hepard v. Goord*, 662 F.3d 603, 610 (2d Cir. 2011) ("an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility."); *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006) (same). Moreover, Plaintiff's claim does not satisfy the capable of repetition, yet evading review doctrine, which represents an exception to the general rule of mootness. *Murphy v. Hunt*, 455 U.S. 478, 482–83 (1982). This doctrine is limited to cases where the challenged action is of duration too short to be fully litigated prior to cessation or expiration; and there is a "'reasonable expectation' or a 'demonstrated probability' that the same controversy will recur involving the same complaining party." *Id.* (quoting *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975)). A general possibility that Plaintiff could be rearrested, convicted and subject to sex offender conditions of probation for a non-sex offense based upon a police report is too speculative to satisfy this mootness exception. *See Preiser v. Newkirk*, 422 U.S. 395, 403 (1975); *Allah v. Annucci*, No. 16-CV-1841 (KMK), 2018 WL 4571679, at *10 (S.D.N.Y. Sept. 24, 2018) (collecting cases finding that inmates' claims of possible future transfer or return to institution is too speculative to satisfy capable of repetition doctrine). Accordingly, the motion for summary judgment is GRANTED as to the official capacity Fourteenth Amendment claim against Defendants Lawrence and Quick.

**Absolute Immunity**

Officer Quick next maintains that he is entitled to absolute immunity on Plaintiff's Fourteenth Amendment individual capacity claim because he was acting as an arm of the court to implement and enforce the court-imposed conditions of probation.

Absolute immunity applies to non-judicial officers when they perform judicial functions. *See Dorman v. Higgins*, 821 F.2d 133, 136 (2d Cir. 1987) ("Functions most apt to be accorded absolute, rather than qualified, immunity are those integrally related to the judicial process. Two types of factors inform such a decision: the need for absolute immunity in order to permit the effective performance of the function, and the existence of safeguards against improper performance."). "As a general matter, probation officers are entitled to immunity in the performance of their duties, but the type of immunity afforded depends on whether 'the duties of the defendants were judicial or prosecutorial, which entitles them to absolute immunity, or administrative, which may entitle them to qualified immunity.'" *Dettelis v. Sharbaugh*, 919 F.3d 161, 164 (2d Cir. 2019) (quoting *King v. Simpson*, 189 F.3d 284, 288 (2d Cir. 1999)). Thus, absolute immunity shields probation officers when they are acting as "an arm of the court" by preparing and providing presentence reports, which are "normally an important part" of a court proceeding. *See Dorman*, 821 F.2d at 136-137. However, when probation officers act outside of their "quasi-adjudicative" roles, their conduct is not absolutely protected, although qualified immunity may apply. *See King,,* 189 F.3d at 288 ("It is unclear whether Simpson's alleged action in retarding, or delaying, King's effective parole date pending a hearing on the institutional incident report filed against him was an adjudicative function like denying or revoking parole or merely an administrative function like scheduling or making a recommendation."); *Scotto v. Almenas*, 143 F.3d 105, 111–13 (2d Cir. 1998) (rejecting immunity defense based on parole officer's recommendation that a warrant be issued for the arrest of a parolee as an administrative rather than adjudicative function).

Relevant here, Connecticut General Statutes § 53a-30 provides that "once probation has been imposed, … the office of adult probation 'may require that the defendant comply with any/or all conditions which the court could have imposed under subsection (a) which are not inconsistent with any condition actually imposed by the court.'" *State v. Smith*, 207 Conn. 152, 168 (1988) (quoting Section 53a-30(b)).[2] A probation officer acts "under the auspices of the judicial branch in requiring the defendant to submit to conditions of probation" and the "probation process operates as an arm of the judiciary, not of the police or prosecution." *State v. Fuessenich*, 50 Conn. App. 187, 198–99 (1998), *cert. denied*, 247 Conn. 956, *cert. denied*, 527 U.S. 1004 (1999). "Thus, when a probation officer demands a probationer's compliance with a condition of probation, he or she is acting as a representative of the judicial branch and not as a police officer." *Id.*; *see also State v. Gaymon*, 96 Conn. App. 244, 250 n. 4 (2006) (citing *Fuessenich*, 50 Conn. App. at 198-99).

The evidence demonstrates that Officer Quick required Plaintiff to be evaluated for sex offender treatment needs in order to implement the conditions of probation set forth by the judge at Plaintiff's sentencing, and that he commenced probation revocation proceedings by seeking an arrest warrant from the superior court when Plaintiff failed to comply with this condition of probation.[3] *See* Defs.' Rule 56(a)1 at ¶¶ 20, 26, 46. Officer Quick was authorized by the superior

---

[2] The current version of Section 53a-30 provides, in relevant part: "When a defendant has been sentenced to a period of probation, the Court Support Services Division may require that the defendant comply with any or all conditions which the court could have imposed under subsection (a) of this section which are not inconsistent with any condition actually imposed by the court." Conn. Gen. Stat. Ann. § 53a-30(b) (West).

[3] Notably, Officer Quick did not make the initial decision to have Plaintiff supervised by the Adult Probation Sex Offender Supervision Unit. Quick Decl. at ¶ 12. He was merely assigned that responsibility once the decision was made. Accordingly, the only conduct upon which Plaintiff's claims could be premised involve Officer Quick's determination that the Plaintiff undergo evaluation at The Connection. Whatever claims Plaintiff sought to bring based upon his "classification," those claims fail as a factual matter with respect to Officer Quick.

court and by statute to require the evaluation and there is no inference to be drawn from the record evidence that Officer Quick was acting outside of his "quasi-adjudicative" role at any time. Thus, the Court concludes that Officer Quick is entitled to absolute immunity on Plaintiff's claim that Officer Quick acted to deprive him of a Fourteenth Amendment liberty interest through a directive that he undergo a sex offender treatment evaluation. *See Baker v. Spinner*, 826 F. App'x 105, 107 (2d Cir. 2020) (citing *Sykes v. James*, 13 F.3d 515, 521 (2d Cir. 1993) (probation officer was entitled to absolute immunity where he acted under "judicial direction" and there were sufficient procedural safeguards to support granting absolute immunity). The motion for summary judgment is GRANTED as to claims against Officer Quick in his individual capacity.

## **CONCLUSION**

For the reasons stated above, Defendants' Motion for Summary Judgment (ECF No. 52) is GRANTED. The clerk is instructed to enter judgment in favor of Defendants and to close this case.

**SO ORDERED** this 7th day of June 2021 at Bridgeport, Connecticut.

_____/s/_____
Kari A. Dooley
United States District Judge